IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

EARL LEE,                          )
                                   )
     Plaintiff,                    )
                                   )
          v.                       )     1:14cv581 (JCC/TCB)
                                   )
COMPUTER SCIENCES CORPORATION,     )
                                   )
     Defendant.                    )

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant Computer Sciences Corporation's Motion for Summary Judgment. [Dkt. 35.] For the following reasons, the Court will grant the motion and enter judgment in Defendant's favor.

### I. Background

On May 20, 2014, Plaintiff Earl Lee ("Plaintiff") filed suit against his former employer, Defendant Computer Sciences Corporation ("Defendant" or "CSC"), alleging three causes of action: (1) retaliation for engaging in protected conduct under the False Claims Act in violation of 31 U.S.C. § 3730(h); (2) wrongful termination on the basis of race, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a); and (3) retaliation for engaging in protected conduct under Title VII, in violation of 42 U.S.C. § 2000e-3. (Compl. [Dkt. 1] at 9-13.)  Defendant moves for summary judgment

1

on all three counts.   (Def.'s Mot. for Summ. J. [Dkt. 35];
Def.'s Mem. in Supp. Mot. for Summ. J. [Dkt. 36].)

## II. Legal Standard

Summary judgment is appropriate only if the record
shows that "there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247-48 (1986); Evans v. Techs.
Applications & Serv., Co., 80 F.3d 954, 958-59 (4th Cir. 1996)
(citations omitted).   In reviewing the record on summary
judgment, "the court must draw any inferences in the light most
favorable to the non-movant [and] determine whether the record
taken as a whole could lead a reasonable trier of fact to find
for the non-movant."  Brock v. Entre Computer Ctrs., 933 F.2d
1253, 1259 (4th Cir. 1991) (citations omitted).

Once a motion for summary judgment is properly made
and supported, the opposing party has the burden of showing that
a genuine dispute exists.   See Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also Ray
Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294,
299 (4th Cir. 2012) (stating the opposing party must "come
forward with specific facts showing that there is a genuine
issue for trial.") (citations and internal quotations omitted).
Specifically, in this Court on summary judgment, the parties are

2

required to list the undisputed material facts in their briefs. E.D. Va. Local Civil Rule 56(B).  "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Id.  Indeed, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

### III. Undisputed Material Facts

Even though Plaintiff's opposition brief was untimely, the Court will consider the substance of the brief in opposition to Defendant's motion for summary judgment.[1]  In

---

[1] Defendant's Motion for Summary Judgment was filed on January 23, 2015.  [Dkt. 35.]  Pursuant to the Local Rules of this Court and the Federal Rules of Civil Procedure, Plaintiff's opposition was due no later than February 6, 2015, fourteen days after the motion was originally filed.  See Fed. R. Civ. P. 6(d); E.D. Va. Local Civ. R. 7(F)(1).  Plaintiff did not file his opposition, however, until February 11, 2015.  He also did not request an extension of time in which to file, nor did Plaintiff attempt to justify why he deserved such an extension.  During the hearing, when asked about the untimely filing, Plaintiff's counsel referenced the Court's September 2, 2014 Scheduling Order, which states, inter alia, "[a]ny party required to file an answer must do so within twenty (20) days."  [Dkt. 8.]

The Local Rules of this Court and the Federal Rules of Civil Procedure govern filing deadlines, as discussed earlier. The Scheduling Order does not.  Rather, it sets dates for the Rule 16(b) pre-trial conference, discovery deadlines, and the final pre-trial conference.  (Id.)  The Scheduling Order also

consideration of Plaintiff's opposition, the Court still finds
that Plaintiff has failed to identify a genuine issue of
material fact that must be decided by the jury.  The Court's
findings of undisputed material facts are summarized as follows:

---

directs any party who has not yet filed an <u>answer to the
complaint</u> to do so within twenty days.  (<u>Id.</u>)  Therefore,
Plaintiff's counsel's response does not excuse the untimely
filing of the opposition brief.  <u>See</u> <u>Key v. Robertson</u>, 626 F.
Supp. 2d 566, 577-78 (E.D. Va. 2009) ("Ignorance of when a time
period expires does not qualify as excusable neglect, nor does a
busy schedule, lack of diligence, inadvertence, or other
manifestations of carelessness and laxity.") (quoting <u>Eagle
Fire, Inc. v. Eagle Integrated Controls, Inc.</u>, No. 3:06cv264,
2006 WL 1720681, at *4 (E.D. Va. June 20, 2006) (quoting <u>Moore's
Federal Practice</u> ¶ 6.06(3)(c))).

The Local Rules of this Court are not suggestions to
be taken lightly.  Admitted practitioners of this Court certify
they have read the Local Rules.  E.D. Local Civ. R. 83.1(C).
Moreover, the Rule 16(b) Scheduling Order, entered October 1,
2014, directed the parties to file dispositive motions in
accordance with Local Civil Rule 7(F)(1).  (16(b) Order [Dkt.
20] at ¶ 2(c).)  And Local Civil Rule 7(I) explicitly addresses
extensions of time.  Plaintiff's opposition is late.
Plaintiff's counsel did not attempt to show good cause for an
extension of time in advance of filing.  Nor did counsel
adequately address the timeliness issue during the hearing.  In
such a circumstance, it is well within the province of the Court
to accept as undisputed all facts contained in Defendant's
statement of undisputed facts when deciding whether Defendant is
entitled to judgment as a matter of law.  <u>Lufti v. United
States</u>, No. 1:09-cv-1114 (AJT/IDD), 2011 WL 1226030, at *2 (E.D.
Va. Mar. 28, 2011).  In this instance, however, the Court will
not resort to this remedy, because even when considering
Plaintiff's brief and the evidence attached thereto, the Court
will find, for the reasons stated more fully below, that
Defendant is still entitled to judgment as a matter of law on
all counts.  Thus, the Court will consider Plaintiff's untimely
filing.  Plaintiff's counsel is admonished to become more
familiar with the Local Rules of this Court, as the Court's
leniency on this occasion is the exception and not the normal
practice of this Court.

Defendant contracts with the Department of Defense to provide "next-generation information technology services" in Iraq and Afghanistan.  Relevant here, Defendant provided these services, including the maintenance, repair, and logistical accountability as the prime contractor for the Gyrocam Vehicle Optics Sensor System ("VOSS project") at the Forward Operating Base ("FOB") Sharana, in the Paktika Province of Afghanistan. Lockheed Martin served as the subcontractor on the VOSS project.

After previously serving as a logistician for Defendant in Iraq, on May 23, 2012, Plaintiff, an African-American male, accepted the position of Logistics Senior Associate with Defendant under the VOSS project at FOB Sharana in Afghanistan.  Prior to arriving in Afghanistan, Plaintiff reviewed Defendant's Employee Handbook and Human Resources policies online.

As a VOSS logistician, Plaintiff was responsible for property accountability for the Gyrocams on the vehicles. Plaintiff reported to Luis Mercado ("Mercado"), the Regional Support Center Manager.  Neville Reid ("Reid") was the VOSS Operations Manager who operated out of Kandahar, Afghanistan. The VOSS department at Sharana was staffed with logisticians and forward support representatives ("FSRs").  Several FSRs worked for Defendant's subcontractor, Lockheed Martin, the manufacturer of the VOSS Gyrocam.

Around January 10, 2013, in anticipation of his future transfer, Mercado appointed new program leaders at FOB Sharana. Plaintiff was appointed as the lead of the VOSS project shop. As of this date, four African-American Lockheed Martin subcontractors -- Daniel Turner, Adam Powell, Sherwin Wade, and McKenzie St. Lot -- worked in FOB Sharana's VOSS department ("the Lockheed Martin employees").  The Lockheed Martin employees did not have the power to give assignments, discipline, or terminate Plaintiff, or otherwise change the terms and conditions of his employment.

Plaintiff started to experience trouble with the Lockheed Martin employees.  Specifically, Plaintiff complained to Mercado and Reid[2] that the Lockheed Martin employees (1) refused to sign property in and out and would not deliver property as instructed, (2) refused to clean up the work shop, and (3) "cannibalized" or reused repaired parts from damaged field cameras.  Reporting these issues were part of Plaintiff's

---

[2] It is unclear from the record how many times Plaintiff complained to Mercado and Reid.  Plaintiff claims it was "numerous" times (Pl.'s Opp'n at 3), but there is no support for that statement at the citation provided by Plaintiff, his deposition at page 97.  Accordingly, the Court finds that Plaintiff complained to Mercado and/or Reid whenever a problem arose in the VOSS shop, mainly because that was part of Plaintiff's job description.  (See, e.g., Pl.'s Dep. [37-2] Ex. B at 138 ("That was basically what I was put there to do, because -- I'm a subject matter expert on product accountability, and Mr. Mercado wanted to know where the equipment was, how is it going out the door, is it being done right, and that's what I was showing him.").)

job, he was not the first person to identify these problems, he did not report or threaten to report these problems to Army personnel, and he never filed a <u>qui tam</u> suit on behalf of the government as to these claims.  Plaintiff also told Mercado that he overheard the Lockheed Martin employees referring to him as a "snitch" and other racially derogatory terms.  Mercado called all of the VOSS shop employees together for a meeting, where Mercado instructed employees to refrain from such behavior.  Immediately preceding this meeting, derogatory terms were written on a white board, but it is unclear who wrote the derogatory terms or at whom the terms were directed.

On February 3, 2013, Lockheed Martin's senior program manager, Nate Power, notified Defendant that the Lockheed Martin employees submitted a formal complaint against Plaintiff.  The subcontractors made the following formal allegations against Plaintiff:

> (1) he discriminated by race, replacing white employees and repeatedly telling the Lockheed Martin employees that his goal was to make the site an "all black, black ran" site and "we have to get rid of whitey;"

> (2) he manipulated employees against each other and made false statements about employees regarding their performance behind their backs creating a hostile environment;

> (3) he used the corporation or his connection with Mercado as an excuse for his violations of policy, and often used the

> phrase "the powers that be" as who allowed
> him to take time off for church;
>
> (4) he misused the company vehicles for
> personal use and failed to consider the
> needs of the other employees for
> transportation; and
>
> (5) he failed to hold regular meetings and
> refused to communicate with the employees
> even extending to locking his door and
> sleeping in his office.

(Def.'s Mem. at 5.)  Defendant considered this to be "high profile" because it was a formal complaint that alleged Plaintiff was creating a hostile work environment and came from Lockheed Martin's program manager.

After receiving the formal complaint, Defendant suspended Plaintiff and removed him from Afghanistan on February 10, 2013, pending an investigation and ultimate resolution to avoid further complications.  Naturally, Plaintiff objected to the allegations that were lodged against him.

Defendant's Employee Relations Specialist, Juliet Slonaker ("Slonaker"), investigated the allegations against Plaintiff.  On February 28, 2013, Slonaker interviewed Turner under the mistaken belief that he was an employee of the Defendant and not Lockheed Martin.  Under the contract, Slonaker was not permitted to contact the Lockheed Martin employees directly, only CSC employees.  During the interview, however, Turner agreed with the allegations made in the formal complaint,

and provided the following examples of Plaintiff's problematic

behavior:

> (1) Plaintiff used the company vehicle as his own,[3] preventing the VOSS workers from doing their work and at times forcing them to walk long distances to work;
>
> (2) Plaintiff reported to Reid that the workers were not completing their work, which was a lie, and Plaintiff sought to sow discord among the workers;
>
> (3) Plaintiff would tell the employees that he wanted the site to be "all black run;" and
>
> (4) Plaintiff would claim "the powers that be" allowed him to do things he was not supposed to do, such as take off work early because he would arrive early (although Turner would not see Plaintiff arrive early), record regular work time when he was sick or at church, and stay in the unauthorized "downtown" area when the others had to move to the compound.

(Def.'s Mem. at 6.)  Plaintiff contested all of these

allegations as unfounded.  Slonaker found Turner to be credible.

Slonaker also interviewed Plaintiff, who denied the

allegations against him.  Plaintiff did not provide a written

statement for the investigation to document his version of the

events.  During the interview, Plaintiff demanded to know where

Slonaker's office was located so he could meet her "face to

---

[3] Plaintiff maintained the keys to the vehicles assigned to the VOSS department.  Plaintiff regularly used one of these vehicles to attend church.  Plaintiff recorded this time traveling to and from church as working time.

face." Slonaker felt threatened by Plaintiff during the interview. Slonaker noted that Plaintiff provided inconsistent responses regarding his time at church and his access to the vehicles. Plaintiff never reported to Slonaker that the Lockheed Martin employees were discriminating against him, nor did he inform Slonaker that he had reported any improprieties or discrimination. Plaintiff's statements were not corroborated by any other evidence.[4]

Ultimately, pursuant to the investigation, Slonaker concluded that Plaintiff created a hostile work environment for the Lockheed Martin employees in violation of Defendant's policy. Slonaker recommended Plaintiff's termination. Defendant's Legal Department and Donald Greene, Senior Manager of Logistics, agreed with Slonaker's recommendation. On April 9, 2013, Defendant terminated Plaintiff's employment.

Based on these undisputed facts, Plaintiff claims that he was terminated in retaliation for reporting fraudulent acts

---

[4] Plaintiff offers an unauthenticated bullet-point list entitled "Lee's notes from phone interview with Slonaker" as proof that he provided additional names for Slonaker to interview, but this list contradicts Plaintiff's own deposition testimony, where he couldn't recall if he provided additional witness names, and Slonaker's sworn affidavit. (Compare Pl.'s Opp'n Ex. I, with Pl.'s Dep. at 102; Def.'s Mem. Ex. A [37-1] Slonaker Aff. ¶ 30.) Plaintiff also attaches character statements to his opposition brief "to vouch for Lee's professional and courteous demeanor." (Pl.'s Opp'n at 8 (citing Exs. 10-17).) But it is undisputed that Plaintiff did not provide such evidence to Slonaker during her investigation.

under the False Claims Act and for reporting the racial
harassment he suffered by other employees.  Plaintiff also
claims he was wrongfully terminated because of his race.

### IV. Analysis

#### A. Count One: Retaliation in Violation of the False Claims Act, 31 U.S.C. § 3730(h)

First, Defendant claims it is entitled to judgment as
a matter of law on Plaintiff's retaliation claim under the False
Claims Act.  (Def.'s Mem. 9-12, 15-17.)  Defendant argues that
Plaintiff admits he did not pursue a qui tam action or even
report any purportedly false claims for payment.  (Id. at 9-12.)
Defendant also argues that Plaintiff cannot show Defendant knew
of any acts in furtherance of a False Claims Act suit.  (Id. at
15-17.)

Plaintiff's claims under Count One are predicated on
his alleged complaints to supervisors "about the employees
working at the VOSS site [who] refused to perform work but were
likely billing their work to the government."  (Compl. ¶ 94.)
The whistleblower provision under the False Claims Act ("FCA")
"provides a cause of action to any employee who is
'discriminated against' by his employer 'because of lawful acts
. . . in furtherance of' an FCA suit."  United States ex rel.
Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d
724, 735 (4th Cir. 2010) (quoting 31 U.S.C. § 3730(h)).  To

defeat summary judgment, there must be a genuine issue of fact showing that (1) Plaintiff took acts in furtherance of an FCA suit; (2) Defendant knew of those acts; and (3) Defendant treated Plaintiff adversely because of these acts. Id. (citing Zahodnick v. IBM Corp., 135 F.3d 911, 914 (4th Cir. 1997)). Because there is no genuine issue of material fact as to any element of this prima facie case, Defendant is entitled to judgment as a matter of law as to Count One in Plaintiff's Complaint.

First, there is no evidence in the record that Plaintiff took acts in furtherance of an FCA lawsuit. Plaintiff's own testimony contradicts the allegations supporting Count One, which shows there is not a genuine issue of material fact as to whether Plaintiff took acts in furtherance of an FCA suit.  It is undisputed he did not, as Plaintiff candidly admits:

> Q. Have you filed any qui tam action?
>
> A [Plaintiff]. No.
>
> Q. Have you filed any action on behalf of the government?
>
> A. No.
>
> Q. Have you filed any claim with the Inspector General?
>
> A. No.

Q. Did you ever threaten anybody at CSC that you would report this or any of these actions to a federal agency?

A. No.

Q. <u>Are you claiming that CSC committed fraud on the government?</u>

A. <u>I never said that.</u>

. . .

Q. <u>Are you claiming that CSC presented any false claim for payment to the government?</u>

A. <u>I never said that.</u>

(Pl.'s Dep. at 145-46 (emphasis added).)  Not only is it undisputed that Plaintiff did not take steps in furtherance of an FCA action, but he also disclaims the substance of his allegation about the alleged fraud committed by other employees when he states: "I never said that."  Even though Plaintiff initially informed his supervisors about the alleged improper cannibalization of parts and other problems occurring in the VOSS shop, this is simply not sufficient to establish the first element of retaliation under the FCA.  Indeed, Plaintiff admitted this was part of his job description as VOSS shop lead. (<u>See</u> Pl.'s Dep. at 138 ("That was basically what I was put there to do, because -- I'm a subject matter expert on product accountability, and Mr. Mercado wanted to know where the equipment was, how is it going out the door, is it being done right, and that's what I was showing him.")); <u>see also</u>

13

Zahodnick, 135 F.3d at 914 ("Here, there is no evidence that [Plaintiff] initiated, testified for, or assisted in the filing of a qui tam action during his employment with IBM and Lockheed. In fact, the record discloses that [Plaintiff] merely informed a supervisor of the problem and sought confirmation that a correction was made; he never informed anyone that he was pursuing a qui tam action.").

Plaintiff cites the legislative history of the 2009 amendments to the False Claims Act for the notion that Congress intended to broaden the scope of protected activity to include "internal reporting to a supervisor . . . and refusals to participate in the misconduct . . . whether or not such steps are clearly in furtherance of a potential or actual qui tam action." (Pl.'s Opp'n at 13.) While true, here, Plaintiff was not reporting fraud to a supervisor in furtherance of an FCA claim. In his own words, Plaintiff never said that CSC committed fraud on the government. (Pl.'s Dep. at 145-46.) Instead, Plaintiff "just told who [he] needed to tell" about improper use of parts, failure to clean the shop, and failure to properly document attendance or the delivery of parts in accordance with company policy and procedure. (Id. at 141-45.) This, admittedly, was also part of his job description. (Id. at 138.)

14

There is no genuine dispute that Plaintiff initially reported problems he observed in the VOSS shop to his supervisors, but did not pursue his allegations any further. Cf. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999) ("The Supreme Court has cautioned that the False Claims Act was not designed to punish every type of fraud committed upon the government.") (citation omitted). "Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that [Plaintiff] was acting 'in furtherance of' a qui tam action." Id. (citing Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994)). Moreover, unlike Plaintiff suggests, there is nothing in the record that shows Defendant was "on notice that litigation [was] a reasonable possibility." (Pl.'s Opp'n at 13 (quoting Layman v. MET Labs., Inc., No. RBD-11-03139, 2012 WL 4018033, at *5 (D. Md. Sept. 12, 2012) (additional citation omitted)).

Accordingly, because there is no genuine issue of material fact, Plaintiff cannot establish the first element of the prima facie case of retaliation under the FCA, and Defendant is entitled to judgment as a matter of law on Count One.[5]

---

[5] With no genuine issue of material fact as to the first element, the Court need not consider the remaining two elements of the prima facie case of retaliation under the FCA. Indeed, how could Defendant know about Plaintiff's alleged "protected

## B. Count Two: Title VII Race Discrimination

Second, Defendant claims it is entitled to judgment as a matter of law on Plaintiff's race discrimination claim brought under Title VII of the Civil Rights Act.  (Def.'s Mem. 18-27.) Defendant argues that Plaintiff fails to satisfy the prima facie case of race discrimination.  (Id. at 18-20.)  Alternatively, assuming Plaintiff could establish a prima facie case, Defendant also argues that Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reason for his termination, or show that it was merely a pretext for race discrimination.  (Id. at 21-27.)

Plaintiff's claims under Count Two are based on allegedly racist comments and slurs made by other employees against him.  (Compl. ¶ 105.)  Under the well-known McDonnell Douglas framework, for a claim of racial discrimination in a disparate treatment case such as this, Plaintiff must show a connection between race and the adverse employment decision by first establishing the following elements of a prima facie case of discrimination:[6] (1) Plaintiff belongs to a racial minority or protected class; (2) Plaintiff was qualified for his job and his performance was satisfactory; (3) despite his qualifications and

---

activity" when the Court has already determined there is no dispute that Plaintiff did not engage in protected activity. Similarly, there can be no causal connection between Plaintiff's unsupported allegation and his subsequent termination.
[6] Without any direct or circumstantial evidence of racial discrimination, the Court proceeds under this framework.

16

performance, Plaintiff suffered an adverse employment decision or was terminated; and (4) similarly situated employees outside the protected class were treated more favorably.  Autry v. N. Carolina Dep't of Human Res., 820 F.2d 1384, 1385 (4th Cir. 1987) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); see also Turner v. Danzig, 8 F. App'x 268, 269-270 (4th Cir. 2001).  Once Plaintiff establishes a prima facie case, the burden shifts to Defendant "to advance a legitimate, non-discriminatory reason for the discharge."  Turner, 8 F. App'x at 270 (citing McDonnell Douglas, 411 U.S. at 804; Williams v. Cerberonics, Inc., 871 F.2d 452, 455-56 (4th Cir. 1989)).  If Defendant advances a legitimate reason for the Plaintiff's termination, the burden shifts back to Plaintiff "to present evidence that the stated reasons are pretextual."  Turner, 8 F. App'x at 270 (citing Williams, 871 F.2d at 455-56).  Because there is no genuine issue of material fact as to any element of this prima facie case, Defendant is entitled to judgment as a matter of law as to Count Two in Plaintiff's Complaint.

Here, Plaintiff fails to establish a prima facie case of race discrimination because there is no evidence that similarly-situated employees outside the protected class, or non-African Americans, were treated more favorably than Plaintiff.  Plaintiff bears the burden of showing a genuine issue of material fact exists as to whether similarly-situated,

non-African American employees were treated more favorably than him.  See Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1994).  No genuine issue exists in the record now before the Court.

First, Plaintiff never reported any concerns of race discrimination to anyone at CSC.[7]  (Pl.'s Dep. at 146.)  Moreover, Plaintiff "doesn't know" if was discriminated against because of his race.  (Id.)  Second, there is no evidence in the record now before the Court that shows non-African American employees were treated more favorably.  (Id. at 127 ("Q. Do you believe you were treated differently for any improper illegal reason while you were at CSC?  A. I don't know anyone that has been treated that way . . . . I was just trying to do the job, so I don't know about anyone else other than myself.").)  Indeed, Defendant employs members of the protected class in supervisory positions, and had just demoted or separated two non-protected class employees who held a similar position to Plaintiff.  (Id. at 22-26, 76-78, 102.)  The four Lockheed Martin employees who lodged their complaint against Plaintiff were also African-American.  Accordingly, without contrary evidence, the Court finds it is undisputed that similarly-

---

[7] Plaintiff told Mercado about the Lockheed Martin employees' comments about race, but this confuses Plaintiff's claim of racial discrimination.  Plaintiff does not claim hostile work environment.  Instead, he claims he was terminated because of his race.  Insensitive or derogatory comments by other employees do not advance Plaintiff's claim.  Moreover, Mercado immediately held a team meeting and addressed the issue.

situated employees outside Plaintiff's protected class were not treated more favorably.  Defendant is therefore entitled to summary judgment on this basis alone.

Ultimately, the question for the Court to resolve on a claim of racial discrimination under Title VII is whether there is any evidence in the record of an intentional discriminatory motive or animus directed toward Plaintiff by Defendant.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004) ("The ultimate question in every employment discrimination case involving a case of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").  The Court finds no evidence in the record to support the theory that Plaintiff was the victim of intentional discrimination.  Plaintiff's race "must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." Id. (internal quotation marks and citations omitted).  Here, Plaintiff complains of racially derogatory comments from the Lockheed Martin employees.  But he cannot point to any evidence in the record of racial animus on the part of Defendant, or any other CSC employees.

Instead, the record is undisputed that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff: he created a hostile work environment for other employees, in

violation of company policy.  See, e.g., Asuncion v. Southland
Corp., 135 F.3d 769, at *2 (4th Cir. 1998) (per curiam) (holding
an employee's termination for violating company policy regarding
cash register shortages was a legitimate, non-discriminatory
reason).  Plaintiff was terminated for violating Defendant's
employee conduct policy, "HRMP 207," which states that an
inability or unwillingness to work harmoniously with others may
result in disciplinary measures up to and including termination.
(Conduct Policy [Dkt. 37-1] Ex. A at 1.)  Plaintiff agreed to
follow this policy after accepting employment with Defendant.
(Pl.'s Dep. at 35.)  After receiving a formal complaint
regarding Plaintiff's behavior, Defendant instigated a human
resources investigation, interviewing witnesses, including
Plaintiff.  Ultimately, Defendant concluded that Plaintiff
violated company policy and terminated him on this basis.
(Termination Letter [Dkt. 37-1] at 48.)  There is nothing in the
record now before the Court to create a genuine issue of
material fact in this regard.  Accordingly, Defendant is
entitled judgment as a matter of law on Count Two, because
Plaintiff fails to establish a prima facie case of race
discrimination, and alternatively, Defendant has offered a
legitimate reason for his termination.[8]

---

[8] Even though there is no argument before the Court on pretext,
the Court alternatively finds that Plaintiff could not establish

C. Count Three: Title VII Retaliation

Third, Defendant claims it is entitled to judgment as a matter of law on Plaintiff's retaliation claim brought under Title VII of the Civil Rights Act.  (Def.'s Mem. 12-14, 17-18.) Defendant argues that Plaintiff did not reasonably believe he was the subject of discrimination, nor did he report the employees' alleged racist comments.  (Id. at 12-14.) Additionally, Defendant also argues that Plaintiff cannot show he was terminated because of his alleged complaints of racial harassment.  (Id. at 17-18.)

Plaintiff's claims under Count Three stem from his alleged protected conduct, i.e., his complaints to supervisors about "problem employees cursing management, including Lee[,] and using racial insults and slurs." (Compl. ¶ 111.)  To survive summary judgment, Plaintiff must satisfy a prima facie case of retaliation: (1) Plaintiff engaged in a protected activity; (2) Defendant acted adversely against him or terminated his employment; and (3) there was a causal connection

---

pretext.  See, e.g., Goldberg v. B. Green & Co., Inc., 836 F2d 845, 848 (4th Cir. 1988) (holding on summary judgment, the Court is not required to accept conclusory assertions regarding an employee's own state of mind, motivations, or perceptions regarding the employment actions at issue).  It is not for the Court to determine whether an employer's decision to terminate an employee was wise or fair, but only whether it was unlawful, and that the reason given for the termination was the true reason.  Mercer v. Arc of Prince George's Cnty., Inc., 532 F. App'x 392, 399 (4th Cir. July 11, 2013) (quoting Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013)).

between the protected activity and the asserted adverse
employment action.  Hoyle v. Freightliner, LLC, 650 F.3d 321,
337 (4th Cir. 2011) (citing Holland v. Washington Homes, Inc.,
487 F.3d 208, 218 (4th Cir. 2007)).  Again,[9] just like for Count
Two, if a prima facie case is established, the burden shifts to
Defendant to offer a legitimate reason for the termination, and
if satisfied, the burden ultimately shifts back to Plaintiff to
demonstrate pretext.  Id.  Because there is no genuine issue of
material fact as to any element of this prima facie case,
Defendant is also entitled to judgment as a matter of law as to
Count Three in Plaintiff's Complaint.  Alternatively, for the
reasons discussed above, Defendant advances a legitimate reason
for Plaintiff's termination.

        In short, judgment as a matter of law on Count Three
in Defendant's favor is appropriate because Plaintiff did not
engage in protected conduct.  Stated differently, he did not
report any concerns of race discrimination to his supervisors
but instead reported racist remarks that he overheard from the
Lockheed Martin employees.  Specifically:

        Q. Did you ever report any concerns of race
        discrimination?

        A. To?

        Q. To anyone at CSC?

----

[9] Just as for Count Two, without any direct or circumstantial
evidence in the record, the Court proceeds under this framework.

A. No.

(Pl.'s Dep. at 146.)  This admission is fatal to Plaintiff's retaliation claim under Title VII.  See, e.g., Jordan v. Alt. Res. Corp., 458 F.3d 332, 341-42 (4th Cir. 2006) ("[E]mployers are not liable . . . if the harassed employee has unreasonably refused to report or has unreasonably waited many months before reporting a case of actual discrimination.") (citing Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267-68 (4th Cir. 2001); Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 269-70 (4th Cir. 2001)).  Even when Plaintiff told Mercado about the racist comments, Mercado immediately called a team meeting and addressed the issue.  Nothing further was done, and Plaintiff "wasn't going to worry about it."  (Pl.'s Dep. at 151.)  There is no evidence in the record that establishes an objectively reasonable conclusion that such remarks altered the conditions of Plaintiff's employment.  See Jordan, 458 F.3d at 341).  Accordingly, on this basis alone, there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law on Count Three.

Furthermore, similar to Count One, the Court need not address the additional elements of the prima facie case of retaliation under Title VII.  But there is no evidence in the record to support or show the requisite causal connection

23

between Plaintiff's alleged complaints and his ultimate termination.  See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007) (holding Plaintiff "must be able to show that [Defendant] fired him because the plaintiff engaged in a protected activity," i.e., he complained about disparate treatment or racial discrimination).

### V. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment and enter judgment in the Defendant's favor.

An appropriate Order shall issue.

|  | /s/ |
|---|---|
|  | James C. Cacheris |

February 24, 2015
Alexandria, Virginia                 UNITED STATES DISTRICT COURT JUDGE